**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES BENNETT, individually and on behalf of all persons similarly situated, | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| DIRECTSAT USA, LLC, UNITEK GLOBAL SERVICES, INC., and DOES 1-20, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff James Bennett brings this action on behalf of himself and all persons similarly situated and, except as to those allegations pertaining to Plaintiff, which are based upon personal knowledge, alleges upon information and belief following investigation of counsel as to other matters, against Defendants, Unitek Global Services, Inc. and DirectSat USA, LLC (collectively, "Defendants"), as follows:

## INTRODUCTION

1.      This action seeks relief for past and present "DirecTV" satellite installation technicians, who worked for and at the exclusive direction of the Defendants and were not paid overtime and wages, and interest thereon to which they are entitled under the Illinois Minimum Wage Law (IWML), the Illinois Wage Payment and Collection Act (IWPCA), and the common law.

## PARTIES, JURISDICTION AND VENUE

2.      Defendant DirectSat USA, LLC ("DirectSat") is organized under the laws of the State of Delaware and is a wholly owned subsidiary of Unitek Global Services, Inc.

3.      Defendant Unitek Global Services, Inc. ("Unitek") formerly known as Unitek USA, LLC is organized under the laws of the State of Delaware and is the parent company of DirectSat.  Unitek perpetrated its conduct herein individually and/or by and through its agent, DirectSat.

4.      Defendant Does 1-20 are officers, principals, agents, managers, and subsidiaries of Defendant, and/or other persons or entities sued by fictitious names who authorized, directed or otherwise participated in the unlawful conduct alleged herein or who acted directly or indirectly in Unitek's or DirectSat's interest in relation to employees who have claims as herein alleged, and who are individually liable under the pleaded causes of action.  Plaintiff will seek to amend the Complaint to name Does following discovery as appropriate.

5.      Plaintiff James Bennett is a citizen of the State of Illinois and resides in this judicial District.  Plaintiff has worked in the State of Illinois for Unitek and DirectSat as a technician between around 2004 to 2007, and again for several months during the past year.

6.      Defendants are each "employers" within the meaning of the IWPCA and IWML. Each Defendant perpetrated the violations alleged below individually and, with respect to the DirectSat Subclasses, jointly and in tandem.

7.      Plaintiff and the Classes defined below, at all times relevant, have been "employees" within the meaning of the IWPCA and IWML.

8.      This Court has jurisdiction over Plaintiff's claims, *inter alia*, pursuant to 28_U.S.C. § 1332(d)(2).  Based on the total value of Plaintiff and the other Class members' claims the total amount in controversy in this case exceeds, and Plaintiff and the Class seek damages, in excess of $5,000,000.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because one or more

Defendants reside in this judicial District, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## FACTUAL ALLEGATIONS

10.     Defendants install, upgrade and service satellite customers for DirecTV, a predominant satellite television provider in the United States.  When DirecTV customers order or upgrade service, Plaintiff and the Class (Defendants' employees) install and/or upgrade the satellite service in the customers' homes.

11.     Unitek is composed of several subsidiaries, including DirectSat USA.  DirectSat is Unitek's fastest growing and a primary install technician subsidiary and employs more than1,700 technicians in Illinois and nationwide to service DirecTV.

12.     Unitek and DirectSat work together to hire and pay Plaintiff and the Class, and Unitek and DirectSat each exert operational control over hiring and payroll practices concerning Plaintiff and the Class.

13.     DirectSat CEO Dan Yannantuno is a Unitek executive.  The Unitek Executive Team also includes CEOs of a handful of other similarly situated Unitek install technician subsidiaries which, just like DirectSat, employ technicians to install and maintain DirecTV satellite television service.

14.     Unitek provides a scalable operating system and management training for its subsidiaries such as DirectSat, including special DirectSat-only training sessions.

15.     Unitek approves new DirectSat hires, and a Unitek representative meets with DirecTV service or production technicians when they are hired, as part of Defendants' job application process.

16.     Unitek issues identification badges for DirectSat employees including Plaintiff

and the Class. Unitek requires Plaintiff and the Class to wear its badges, which identify employees as Unitek workers and further identify the employees as an authorized representative of DirecTV.

17.     Unitek and DirectSat required Plaintiff and other Class members to email payroll information directly to Unitek. When Plaintiff and other Class members had a payroll dispute, *e.g.,* regarding the improper taking of deductions more fully described herein, DirectSat directed the employee to speak with Unitek to resolve the dispute.

18.     When welcoming employees, Defendants send employees a welcome letter that is from DirectSat and Unitek jointly.

19.     Defendants have employed Plaintiff and other Class members, substantially on an hourly basis, and on a limited basis on commission, to provide service to satellite television customers in Illinois and in other States.

20.     Defendants exerted control over Plaintiff and the Class members' work schedule, required work times, work tasks, and manner of job performance.

21.     Plaintiff and the putative members of the Class worked for and at the direction of DirectSat and Unitek as DirecTV installation technicians, performing satellite TV installation service calls, administrative work, including travel time and otherwise, on a daily basis.

22.     Defendants failed to pay wages and overtime to Plaintiff and the Class in the following ways, including within the three years prior to the filing date of this complaint, any and all of which give rise to Plaintiff's claims below.

**Defendants' Failure to Pay Employees Wages and Overtime
for Working in Excess of Forty Hours Per Week**

23.     At relevant times Defendants required Plaintiff to work approximately seven days a week and sixty to seventy hours per week. Defendants also required other members of the

Class to work in excess of forty hours per week.

24.     Defendants paid the Class including Plaintiff approximately four hundred dollars to six hundred dollars per week, which fell short of the required minimum wage per hour, and which did not provide time and one-half compensation for time worked in excess of forty hours in a single work-week, within each of the three years preceding the filing of this Complaint.

25.     Defendants caused Plaintiff and other Class members to be paid per installation or upgrade.  Plaintiff and other Class members routinely worked and were not paid for installations not considered successful as more fully described herein.  Plaintiff and other Class members were denied minimum wage and overtime pay because Defendants provided compensation only per successful installation and upgrade and not for all work performed, and failed to properly tabulate time worked to ensure that Plaintiff and the Class received minimum wage and overtime.

26.     Defendants did not compensate Plaintiff and other Class members when visiting DirecTV customer homes on occasions when no service could be performed upon arrival due to the customer not being home to permit the installer access to the customer's house.

27.     Defendants did not compensate Plaintiff and other Class members for services provided on occasions when a customer complained about service and/or installation.

28.     Defendants did not compensate Plaintiff and other Class members when Plaintiff arrived at a customer's home, and was prepared for an installation but the physical premises rendered installation impossible *e.g.,* when there was no direct line of vision to the satellite.

29.     Defendants required Plaintiff and other Class members to pick up equipment from a warehouse each week and did not compensate Plaintiff and other Class members for this travel and preparation time.

30.     Defendants required Plaintiff and other Class members to attend a mandatory weeklong training session from approximately 8:00 am to 5:00 pm for which Defendants failed to pay wages and overtime compensation.

31.     Defendants forced Plaintiff and other Class members to attend mandatory Friday sales meetings and did not compensate Plaintiff and other Class members for this time.  These meetings could take up to nine hours to attend (including travel time).  Much of this time was spent waiting for Defendants to commence the meeting.

32.     Defendants regularly required Plaintiff and other Class members to submit to an inventory check to assess all equipment.  Inventory checks could take up to approximately five hours to complete.  Plaintiff and other Class members were not compensated for time spent in these mandatory inventory checks.

33.     Plaintiff processed up to fifteen to twenty emails a day involving directions and sales issues, for which Defendants failed to pay wages and overtime compensation.

34.     Defendants have no timekeeping system in place and therefore do not track employee hours worked, including overtime hours.  Defendants further have no system in place to calculate overtime pay for hours worked per week in excess of forty.  However, damages due to Plaintiff and the Class are ascertainable from Defendants' records; and Plaintiff and the Class record their hours worked and regularly submit such records to Defendants.

35.     Defendants perpetrated each of the aforesaid occurrences on a regular basis, which prevented Plaintiff and the Class from receiving their due and owing minimum wage for hours worked and overtime wage for hours worked per week in excess of forty.  Thus, by virtue of Defendants' above-described conduct, Plaintiff and other Class members worked more than forty-hour work-weeks and were not paid the proper minimum wages and overtime for hours

worked.

**Defendants' Improper Taking of Deductions**
**From Employee Paychecks Without Consent**

36.     Throughout the employment term, Defendants unilaterally deducted various charges from Plaintiff and other Class members' paychecks as more fully described below. Defendants made and approved deductions detailed below without obtaining express written consent as required by applicable law. *See, e.g.*, 820 ILCS §115/9.

37.     These pay deductions or "charge-backs" were from up to two hundred to two thousand dollars per paycheck.

38.     For example, as a prerequisite to employment, Defendants required Plaintiff and other Class members to submit to, and pay for, a background check and drug screening. Defendants deducted one hundred dollars from Plaintiff and other Class members' wages to pay for said background check and drug screening. In addition to deducting monies for Plaintiff and other Class members' own background check and drug screening, Defendants deducted a charge from Plaintiff and other Class members' wages to pay for the background check and drug screening of other applicants and new hires working with them.

39.     Further, DirecTV requires all service technicians who install DirecTV satellites to be certified by the Satellite Broadcasting and Communications Association ("SBCA"). To become SBCA-certified, a service technician must complete two tests demonstrating basic knowledge on satellite installation. Defendants deducted one hundred and fifty dollars from Plaintiff and other Class members' wages for their SBCA certification (the "certification" chargeback). In addition to deducting monies for their own SBCA certification, Defendants deducted monies from Plaintiff and other Class members' wages for the SBCA certification of employees working with them.

40.     Defendants offer a time guarantee to customers whereby the customer is guaranteed that a service technician will arrive within a set time frame. Defendants deducted one hundred dollars whenever a customer complained about the arrival time of Plaintiff and/or other Class members (even if Plaintiff and/or other Class members arrived at the call site within the guaranteed time frame). The deduction was taken even if Defendants' scheduling caused the delay, *e.g.*, when Defendants scheduled multiple installations within the same time frame making it impossible for Plaintiff and/or other Class members to complete all installations within the stated time frame.

41.     Defendants required Plaintiff and other Class members to connect DirecTV satellite television service to a phone line in each customer's home. Defendants deducted a charge from Plaintiff and other Class members' paychecks when the service was not successfully connected to a phone line, including when the customer had no phone service or no available phone jacks.

42.     Whenever a customer claimed damage to property, Defendants deducted the value of the damage from Plaintiff and other Class members' wages. (Defendants deducted this amount even when Defendants' internal investigation indicated that Plaintiff and other Class members were not at fault for the damage.)

43.     Defendants required Plaintiff and the Class to rent equipment, such as ground blocks, fittings, screws, bolts, wires and cables, from Defendants. This equipment was necessary to complete a satellite installation or upgrade and Plaintiff and other members of the Class were not permitted to rent said equipment from any other source. Defendants deducted the cost of this employer-required equipment from Plaintiff and other Class members' wages.

44.     Defendants have perpetuated pay deduction practices set forth above and herein without obtaining employees' consent (written or otherwise) for such deductions at the time the deductions were made, and which resulted in routine failure to pay Plaintiff and the other Class members lawful minimum wages and overtime during the past three years from the date of filing this Complaint and beyond.  Defendants' deduction practice is ongoing.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings his claims individually and, pursuant to Fed. R. Civ. Pr. 23(b)(3), as representative of the following Class[1] of similarly situated individuals:

**IWML Class**
All persons employed by Unitek as service technicians or production technicians in the State of Illinois at any time between June 12, 2008 and the date of trial.

**IWML DirectSat Subclass**
Subclass A: All persons employed by DirectSat as service technicians or production technicians in the State of Illinois at any time between June 12, 2008 and the date of trial.

**IWPCA Class**
All persons employed by Unitek as service technicians or production technicians in the State of Illinois at any time between 10 years prior to the date of filing this complaint and the date of trial.

**IWPCA DirectSat Subclass**
All persons employed by DirectSat as service technicians or production technicians in the State of Illinois at any time between 10 years prior to the date of filing this complaint and the date of trial.

46.     Plaintiff reasonably believes that each Class is so numerous that joinder of all members of each Class is impracticable.

47.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members of the Class.

---

[1] Unless otherwise noted, "Class" as used in this complaint refers to each Class and DirectSat Subclass described herein.

48.     Plaintiff's claims are typical of the claims of the Class.

49.     Plaintiff will fairly and adequately protect the interests of the Class; Plaintiff has no interests antagonistic to said Class members; and Plaintiff has retained counsel competent and experienced in class action litigation.

50.     A class action provides a superior and manageable method for fairly and efficiently adjudicating this controversy because, among other things, joinder of all members of the Class is impracticable, and many members of the Class cannot feasibly vindicate their rights by individual suits because their damages are outweighed by the burden and expense of litigating individual actions against the corporate Defendants.

**CAUSES OF ACTION**

51.     Plaintiff brings each Count below against Unitek individually and on behalf of the IWCPA and IWML Classes, and against Unitek and DirectSat  individually and on behalf of the IWPCA and IWML Subclasses.

**COUNT I**

**<u>ILLINOIS MINIMUM WAGE LAW</u>**

52.      Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein in Count I, which Plaintiff brings individually and on behalf of the IMWL Class and DirectSat Subclass.

53.     Defendants are employers and Plaintiff and the IMWL Class are employees within the meaning of the Illinois Minimum Wage Law ("IMWL"), which requires Defendants to pay their non-exempt employees such as Plaintiff and IMWL Class members minimum wage, and overtime at a rate of one and one-half times their regular rate of pay for time worked in excess of forty hours in one week.  820 ILCS §§ 105/4 and 4a.

Case: 1:10-cv-04968 Document #: 1 Filed: 08/06/10 Page 11 of 16 PageID #:11

54.     Defendants, due to their above-described conduct, have refused and/or failed to pay Plaintiff and other IMWL Class members minimum wage and overtime that they are entitled to receive under the IMWL for wages and overtime worked in the instances set forth above (*see* ¶¶ 23-35, *supra*). 820 ILCS §§ 105/4 and 4a.

55.     Defendants, due to their above-described improper taking of deductions, have failed to pay Plaintiff and other IMWL Class members minimum wage and overtime because the deductions had the effect of unlawfully reducing Plaintiff and other Class members paychecks to below the required minimum wage and overtime pay (*see* ¶¶ 36-44, *supra*). 820 ILCS §§ 105/4 and 4a.

56.     As a result of Defendants' above-described illicit conduct in violation of the IMWL, Plaintiff and other IMWL Class members were damaged.

57.     Plaintiff seeks to recover from Defendants minimum wages and overtime for hours worked as set forth above, plus statutory and punitive damages, interest, attorneys' fees, and costs. *E.g.*, 820 ILCS §§ 105/4a, 12a.

**COUNT II**

**ILLINOIS WAGE PAYMENT AND COLLECTION ACT**

58.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein in Count II, which Plaintiff brings individually and on behalf of the IWPCA Class and DirectSat Subclass.

59.     At hire and continuing thereafter, Defendants orally promised and agreed to pay Plaintiff and the IWPCA Class members for installation and technician services provided to DirecTV customers, at agreed upon "wages" as defined by the IWPCA. *See* 820 ILCS § 115/2.

60.     Defendants were required to pay Plaintiff and the other IWPCA Class members

11

said wages for time worked during each pay period under the IWPCA. *E.g.,* 820 ILCS § 115/3.

61.     Throughout the employment term, Defendants deducted charge-backs, as set forth above (*see* ¶¶ 36-44), from Plaintiff and other IWPCA Class members' paychecks without obtaining express written consent for the actual charge-backs as required by the IWPCA. *See* 820 ILCS §115/9.

62.     Pursuant to the IWPCA, 820 ILCS § 115/9, Defendants are prohibited from deducting Plaintiff and other IWPCA Class members' wages (*see* ¶¶ 36-44), unless Defendants meet certain exceptions, which Defendants have the burden to prove under 56 Ill. Adm. Code § 300.710.  No such exception applies and therefore Defendants' said deductions were unlawful. (*See* 820 ILCS § 115/9, prohibiting employers from deducting wages unless "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made; (5) made by a municipality….").

63.     For example, Defendants failed to obtain the "express written consent" of Plaintiff and the IWPCA Class members to make the deductions described above, and such consent was not be "given freely" and in writing "at the time the deduction is made." 820 ILCS §115/9; 56 Ill. Adm. Code § 300.720.  *See also* 56 Ill. Adm. Code § 300.930, imposing additional unmet requirements for disputed deductions.

64.     Defendants also deducted money from Plaintiff and other IWPCA Class members' wages for employer-required equipment, (*see* ¶¶ 20 and 44-45).  An employer may "not deduct the cost of equipment… required by the employer from an employee's wages… unless the employee's express written consent is given freely at the time the deduction is made." *See* 820 ILCS § 115/9; 56 Ill. Adm. Code § 300.850.  Defendants deducted the cost of employer-

required equipment in a manner that was not expressly consented to in writing, given freely, by Plaintiff and the Class, at the time the deduction was taken, in violation of the IWPCA. *See* 820 ILCS § 115/9; 56 Ill. Adm. Code § 300.850.

65.     Defendants further deducted monies from Plaintiff and other IWPCA Class members' paychecks whenever a customer claimed damage to property. According to the IWPCA and relevant regulations, "[a] financial loss suffered by an employer due to damage to… customer [property] shall not be deducted from an employee's pay unless the employee's expressed written consent is given freely at the time the deduction is made." 56 Ill. Adm. Code § 300.710. Defendants made these deductions without obtaining express written consent given freely at the time the deduction was made in violation of the IWPCA and relevant regulations. 220 ILCS § 115/9; 56 Ill. Adm. Code § 300.710.

66.     Defendants failed to pay Plaintiff and the IWPCA Class said wages, in violation of their promise and agreement to pay Plaintiff and the Class, by taking such deductions from employee paychecks in violation of the IWPCA.  220 ILCS § 115/9.

67.     As a result of the Defendants' unlawful deduction of charge-backs, Plaintiff and the IWPCA Class were damaged in violation of the IWPCA in amounts to be proven at trial. 820 ILCS § 115/9.

**COUNT III**

**<u>UNJUST ENRICHMENT</u>**

68.     Plaintiff repeats and realleges the previous allegations as if fully alleged herein in Count III, which Plaintiff brings individually and on behalf of the IWPCA and IWML Class and DirectSat Subclass.

69.     Defendants' above-described conduct violates the law and public policy.

13

70.     Defendants were unjustly enriched as a result of their wrongful conduct by taking and keeping for themselves deductions from Plaintiff and Class members' paychecks without proper and adequate permission of said employees at the time the deductions were made.

71.     Defendants were unjustly enriched as a result of their wrongful conduct by withholding, and keeping for themselves, wages for time and overtime worked, plus interest, and benefits therefrom, including monies which Plaintiff and the Class members earned and are rightfully owed.

72.     Because Defendants have unlawfully retained these sums, they have been able to use and earn interest on said sums, which as a matter of equity belongs to Plaintiff and the Class.

73.     Defendants' benefited from retention of such monies due and owing to Plaintiff and the Class members, which violates fundamental principles of justice, equity and good conscience.

74.     As a result, Plaintiff and the IWML and IWPCA Class and DirectSat Subclass members are entitled to restitution of said sums, including without limitation lost interest as allowed by applicable law, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

a.  Find that this case may be properly maintained as a class action, and appoint the Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

b.  Find that Defendants, by their above-described conduct with respect to Plaintiff and the Class, have violated the IMWL, and grant judgment accordingly against the Defendants

c. Find that Defendants, by their above-described conduct with respect to Plaintiff and the Class, have violated the IWPCA, and grant judgment accordingly against the Defendants;

d. Find that the Defendants are unjustly enriched by virtue of their conduct with respect to Plaintiff and the Class as alleged herein, and grant judgment in Plaintiff's favor and against Defendants;

e. Award damages to Plaintiff and other members of the Class, including the full amount of minimum wages, overtime wages, damages, penalties and interest as allowed by the IMWL, IWPCA and the common law;

f. Award the full amount of wages due for all improper deductions as allowed by the IWPCA, *e.g.,* 820 ILCS § 115/9, plus interest thereon;

g. Award restitution to Plaintiff and the Class members as set forth above;

h. Require each Defendant to account for all monies improperly withheld as a result of the aforementioned conduct; enjoin each Defendant from dispersing said monies; and impose a constructive trust on said monies until further order of the Court;

i. Award reasonable attorneys' fees and costs; and

j. Award such other and further relief as the Court deems just and appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury of all matters so triable.

Respectfully submitted,

JAMES BENNETT, individually and on behalf of all persons similarly situated

15

By: /s Ilan Chorowsky_____
   One of Plaintiff's Attorneys

Ilan Chorowsky, Esq. #6269534
PROGRESSIVE LAW GROUP LLC
505 N. LaSalle, Suite 350
Chicago, IL 60654
(312) 787-2717
ilan@progressivelaw.com

Robin Potter, Esq. #3123932
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org

16