IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES BENNETT, *et al.*,

                Plaintiffs,

      v.

UNITEK GLOBAL SERVICES, LLC, *et al.*,

                Defendants.

Case No. 10 C 4968

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions for Summary Judgment and Defendants' Motion to Strike. For the reasons below, Defendants' motion to strike is granted in part and denied in part and Defendants' Motions for Summary Judgment are granted in part. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses these claims without prejudice to allow Plaintiffs to re-file in state court if they choose.

## I. BACKGROUND

Plaintiffs James Bennett ("Bennett"), Jerome Garrison ("Garrison") and Jermaine Litt ("Litt") bring this suit against Defendants DirectSAT and Unitek Global Services, LLC (collectively, the "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law

("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). The relevant facts are as follows.

DirectSAT ("DirectSAT") employs individuals who install, upgrade, and service DirectTV customers. It began operating in Illinois in 2006. For its installation services, DirectSAT hires subcontracting companies and independent contractors.

Plaintiff James Bennett entered into an agreement with DirectSAT in September 2006 (the "September 2006 Agreement"). The 2006 Agreement provided that Bennett would perform satellite installation services for DirectSAT on behalf of his company, Illinois Wiring, Inc. ("Illinois Wiring") for a one-year period. This Agreement contained an automatic renewal clause that would continue the parties' business relationship unless written notification of cancellation was provided.

Bennett formed Illinois Wiring in 2004 and was the company's sole owner and president. After the September 2006 Agreement with DirectSAT expired, Illinois Wiring remained in business, but discontinued performing services for DirectSAT. Eventually, the company dissolved in 2009.

Shortly thereafter, Bennett formed a different company, Unlimited, LLC ("Unlimited"). Unlimited operated out of the same location and performed essentially the same services as Illinois Wiring.

In April 2009, Bennett entered into a second agreement (the "2009 Agreement") with DirectSAT. The term on this contract was again one year. The other terms of the 2009 Agreement were generally the same as the 2006 Agreement, with the exception being that in 2009, Bennett was performing installation services on behalf of his new company, Unlimited.

After the 2009 Agreement expired, the business relationship between Bennett and DirectSAT ceased. Unlimited continues to perform cable installation services in Illinois today.

In August 2010, Bennett filed a Complaint against DirectSAT and Unitek Global Services, LLC ("Unitek"). In his Complaint, Bennett alleged that Defendants failed to provide overtime compensation and deducted monies from his paychecks without his consent.

In February 2012, Bennett amended his Complaint to add Plaintiffs Jerome Garrison and Jermaine Litt. Garrison and Litt were co-owners of Professional Services, Inc. ("Professional Services") at the time they executed their first Agreement with DirectSAT in November 2006.

Professional Services performed cable, satellite, and alarm installation work. It was formed prior to November 2006 and had contractual agreements with other companies prior to entering into an agreement with DirectSAT. When Garrison and Litt formed Professional Services, they were required to satisfy corporate

reporting requirements, pay federal and state taxes, provide their own insurance and purchase their own trucks and tools. They ran the company out of Garrison's residence.

At some point in 2009, Professional Services dissolved. Subsequently, Garrison and Litt formed a new company, Sat1Pro, Inc. ("Sat1Pro"). Garrison and Litt were the co-owners of Sat1Pro and operated the business out of Garrison's home.

On November 7, 2006, Garrison and Litt entered into their first Agreement ("the November 2006 Agreement") with DirectSAT. Like Bennett, Litt and Garrison's Agreement was executed on behalf of their company, Professional Services. The terms of the November 2006 Agreement were virtually identical to the one Bennett executed. It identified Professional Services as an "Independent Contractor" and was for a one-year period with an automatic renewal unless written notification of cancellation was provided. *See,* Defs.' L.R. 56.1 Statement of Material Facts as to Litt and Garrison, Ex. 5.

On or about January 1, 2009, Garrison and Litt entered into a second Agreement (the "January 2009 Agreement") with DirectSAT on behalf of Professional Services. The January 2009 Agreement was again nearly identical to the other Agreements described above.

On or about April 29, 2009, Garrison and Litt entered into a third Agreement with DirectSAT ("the April 2009 Agreement").

- 4 -

This Agreement was on behalf of their new company, Sat1Pro, and contained the same terms as the other agreements described above.

At some point in 2009, DirectSAT terminated the April 2009 Agreement with Sat1Pro. Sat1Pro remains in business today.

Plaintiffs Bennett, Garrison and Litt filed their Second Amended Complaint in February 2012. In their Complaint, Plaintiffs claim to be employees of DirectSAT and allege that DirectSAT and Unitek failed to pay them appropriate wages and overtime compensation in violation of the FLSA, the IMWL, and the IWPCA. Defendants have moved for summary judgment against all Plaintiffs on all counts. They have filed two separate motions – one for Bennett and one for Garrison and Litt.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could affect the outcome of the case. *Id.* If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To establish a genuine issue of fact, the non-moving party "must do

more than show that there is some metaphysical doubt as the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

### III.  **ANALYSIS**

After Plaintiffs filed their response to Defendants' summary judgment motions, Defendants filed a Motion to Strike Plaintiffs' declarations, exhibits, and Local Rule 56.1(b) submissions. *See,* ECF No. 142.  Prior to addressing the merits of Defendants' Motions for Summary Judgment, the Court examines briefly the Motion to Strike.

### A.  **Defendants' Motion to Strike**

Defendants contend that portions of Plaintiffs' responses to Defendants' Statements of Material Fact should be struck because Plaintiffs failed to abide by Local Rule 56.1.  They also ask the Court to strike Plaintiffs' unauthenticated exhibits and contradictory declarations.  The Court will address all three objections in turn.

#### *1.  Plaintiffs' Response to Defendants' Local Rule 56.1 Statements of Material Fact*

Local Rule 56.1 governs motions for summary judgment.  Its purpose is to "make it relatively simple for the court to determine whether there are bona fide issues of fact requiring a trial." *Widmar v. Sun Chemical*, No. 11-C-1818, 2012 U.S. Dist. LEXIS 148684 at *1 (N.D. Ill. Oct. 16, 2012).  The Rule requires

the party moving for summary judgment to put forth a statement of
"material facts" which consist of "short numbered paragraphs"
that include specific references to "affidavits" or "other parts
of the record" that support the facts set forth.  L.R. 56.1(a).

Pursuant to Rule 56.1, the party opposing summary judgment
must give "a concise response" to each of the movant's
statements.  L.R. 56.1(b).  If the opposing party denies a fact
as true, the Rule requires the opposing party to provide
"specific reference to affidavits, parts of the record, and other
supporting materials" that support the denial.  *Id.*

Defendants claim a substantial portion of Plaintiffs'
responses to Defendants' Local Rule 56.1 Statements must be
struck because Plaintiffs failed to abide by Local Rule 56.1.
Specifically, Defendants take issue with the additional facts
Plaintiffs added to a number of the Statements.

After reviewing the responses Defendants objected to, the
Court finds the argument well-taken.  Plaintiffs' response to
Defendants' paragraph 67 is a good example.  *See,* Pl.'s Resp. to
Def. Bennett's L.R. 56.1 Statements of Fact ¶ 67, ECF No. 130,
PageID# 1687-90.  This paragraph explains Mr. Bennett's
responsibilities as owner of Unlimited.  Specifically,
Defendants' state Bennett's responsibilities included payroll,
picking up equipment, supervising technicians, and maintaining

bank accounts.  *Id.* at PageID# 1687.  As support, they reference Bennett's deposition testimony.  *See, id.*

In response to this statement, Bennett begins by stating, "[d]isputed in part."  *Id.*  He then proceeds to provide a three and half page explanation of his roles and responsibilities. *See*, *id.*  Explanations of this kind are not appropriate in a response to a Local Rule 56.1 Statement.  *See,* L.R. 56.1(b). Accordingly, the Court strikes this response and deems the fact admitted.  *See, Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (stating that a response is not the place for argumentative denials and a nonmovant's failure to adhere to these requirements is equivalent to admitting the movant's statement).  While Plaintiffs argue that the response is appropriate because Defendants included four separate facts in Paragraph 67, the Court disagrees.  To be clear, Paragraph 67 is three lines long. It states four of Bennett's responsibilities.  A denial spanning more than three pages long can in no way be construed as "concise."  L.R. 56.1(b).

Bennett's responses to Paragraphs 9, 11, 21, 22, 29, 31, 33, 35, 37, 38, 46, 48, 50, 51, 52, 53, 54, 57, 61, 63, 65, 67, 69, 76, 77 are similarly deficient.  As such, the Court strikes the additional facts contained therein and deems the facts admitted. *Finger v. Orkin, Inc.*, No. 08-0424, 2009 U.S. Dist. LEXIS 2810, at *7 (N.D. Ill. Jan. 15, 2009) ("unresponsive denials and

responses that include additional facts do not comply with Local Rule 56.1 and ordinarily must be disregarded[.]").

Plaintiffs' responses to Defendants' Local Rule 56.1 Statements as to Litt and Garrison also add additional facts and arguments. Because of this, the Court strikes the responses to Paragraphs 9, 13, 15, 19, 20, 25, 26, 31, 36, 40, 41, 42, 44, 45, 46-47, 51, 52-58, 62-64, 68-70, 72, and 74 and deems the facts admitted. *See, id.*

### 2. *Unauthenticated Exhibits*

Defendants next argue that the Court should strike Plaintiffs' unauthenticated exhibits. Defendants claim Plaintiffs submitted several emails that were sent by individuals who were never deposed and therefore are unauthenticated and represent inadmissible hearsay. In response, Plaintiffs provide declarations of the recipients of the emails. *See,* ECF No. 150-1; 150-2. The Court finds these declarations sufficient for authentication purposes and therefore declines to strike the exhibits. *See, Fenje v. Feld*, 301 F.Supp.2d 781, 809 (N.D. Ill. 2003) ("e-mail communications may be authenticated as being from the purported author based on an affidavit of the recipient.").

### 3. *Plaintiffs' Declarations*

Defendants also contend that Plaintiffs' declarations must be struck. They claim the declarations attempt to create an

issue of material fact by contradicting earlier deposition testimony. Specifically, Defendants point to portions of Bennett's declaration. They claim Bennett's declaration contradicts his deposition testimony and his sworn bankruptcy filings.

Plaintiffs argue otherwise. They claim the only paragraph that Defendants reference as contradictory is an explanation or clarification of an answer Bennett provided at his deposition.

After reviewing the relevant excerpts of the deposition and comparing it to the statement in the declaration, the Court gives Plaintiffs the benefit of the doubt, and declines to strike the declaration.

### B. Defendants' Motions for Summary Judgment

Defendants argue that they are entitled to judgment as a matter of law with respect to all Plaintiffs because Plaintiffs were independent contractors and cannot be construed as "employees" under the FLSA, IMWL, or the IWCPA. Defendants claim Plaintiffs' status as independent contractors status causes all of their claims to fail.

### 1. Plaintiffs' FLSA Claims (Counts I & II)

"It is undisputed that the provisions of the FLSA do not apply unless there is a valid employer-employee relationship." *Bulaj v. Wilmette Real Estate & Mgmt. Co.*, No. 09-C-6263, 2010 WL 4237851 at *4 (N.D. Ill. Oct. 21, 2010) (citing *Sec. of Labor,*

*U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534-35 (7th Cir. 1987). The relevant provision of the FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e). While the definition has been construed broadly, it is well established that independent contractors are not considered employees under the FLSA. *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F.Supp.2d 740, 749 (N.D. Ill. 2011).

To determine whether an individual is an "employee" under the FLSA, the Seventh Circuit instructs courts to consider the "six-factor test to determine the economic reality of the situation." *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 565 (7th Cir. 2009) (citations omitted). Those six factors include:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Lauritzen*, 835 F.2d at 1535.

These factors are designed to assist the Court in ascertaining whether employees are actually "dependent upon the business to which they render service." *Bartels v. Birmingham*,

- 11 -

332 U.S. 126, 130, (1947). The more economically dependent the alleged employees are upon the business, the more likely an employer-employee relationship exists and the FLSA applies. The less dependent the alleged employee is to the business, the more likely the Court will find the worker to be an independent contractor in business for himself. *Solis*, 819 F.Supp.2d at 749. Courts have held repeatedly that none of the six factors is dispositive and instead the totality of the factors and circumstances control. *See, id.*

Prior to analyzing these six factors the Court turns to the language of the Agreements at issue. While the Court acknowledges that an "employer's label of [an individual as] an 'independent contractor' carries little weight in defining [an individual's] status as [an] independent contractor[] . . . [,]" the language is relevant in the Court's analysis. *Solis*, 819 F.Supp.2d. at 752.

Section XIV of the all of Plaintiffs' Agreements is titled "Relationship of Parties." *See,* ECF Nos. 116-5, 116-6, 119-5, 119-6. It reads:

> "Contractor" is an independent contractor of
> the "Company" [DirectSAT]. Nothing in this
> Agreement shall be construed as creating
> employer-employee relationships, as a
> guarantee of future employment or engagement
> or as a limitation upon the "Company's" sole
> discretion to terminate this Agreement at
> any time without cause. "Contractor"
> further agrees to be responsible for all of

- 12 -

> "Contractor's federal and state taxes,
> withholding social security, insurance and
> other benefits.

Defs.' L.R. 56.1 Statement of Material Fact as to Plaintiff James
Bennett, Ex. 5, ECF No. 116-5.

While the Court finds this language unambiguous with respect
to DirectSAT's subjective intent regarding the parties'
relationship, the Seventh Circuit directs courts to analyze the
six factors announced in *Lauritzen* to ensure that employers do
not include language of this kind as a way of escaping the
requirements of the FLSA. *See generally*, *Estate of Suskovich v.
Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 565 (7th
Cir. 2009).

  a. *Nature and Degree of DirectSAT's Control*

Courts in this Circuit have held that "[e]vidence that
reflects the employer's dominance over the 'manner and method' of
how work is performed tends to indicate that the individual was
an employee under the "control" of the employer." *See, Jaworski
v. Master Hand Contractors, Inc.*, No. 09 C 07255, 2013 WL 1283534
at *3 (N.D. Ill. Mar. 27, 2013) (citations omitted).

Defendants argue that DirectSAT did not control the manner
and amount of work performed by Plaintiffs or whether Plaintiffs
even worked at all. They point out that DirectSAT's lack of
control is illustrated by the fact that all Plaintiffs had
established their own installation companies prior to contracting

with DirectSAT in 2006.  They also point out that Plaintiffs had entered into other agreements with other customers to perform similar services before contracting with DirectSAT in 2006.

Plaintiffs disagree.  They contend DirectSAT had significant control over Plaintiffs daily work schedules since Plaintiffs "could not reschedule jobs" and were obligated to follow "strict procedures[.]"  Pl.'s Mem. in Opp. to Def. Bennett's Mot. for Summ. J. at 8.

As support that this is sufficient to transform the relationship to one of employer-employee, Plaintiffs rely upon a handful of non-binding district court cases.  After reviewing these cases however, the Court finds Plaintiffs' argument unavailing.

First, the Court points out that all of the cases Plaintiffs reference differ in one important respect from the one at bar. None of the cases involve an alleged employee who admittedly was the sole owner and/or co-owner of two separate companies at the time of the alleged employer-employee relationship.  *See,* Pl.'s Resp. to Def. Bennett's L.R. 56.1 Statement of Material Fact ¶¶ 10, 15, 16, ECF No. 130; Pl.'s Resp. to Def. Garrison and Litt's L.R. 56.1 Statement of Material Fact ¶¶ 7, 21. ECF No. 136.

Next, the Court examines the factors listed in the Department of Labor Field Operations Handbook (the "Handbook") to

- 14 -

analyze the amount of control DirectSAT had over Plaintiffs. Among other things, the Handbook instructs courts to consider the length of the contract, the employer's ability to discharge employees of the alleged contractor, and whether the work done by the alleged contractor is the same or similar to that done by admitted employees. *See, Solis v. Cascom, Inc.*, No. 3:09-CV-2011 U.S. Dist. LEXIS 122573 at *10-11 (S.D. Ohio Sep. 21, 2011) (citing The Department of Labor Field Operations Handbook § 10b06).

In this case, the Agreements executed by the parties were for a definite one-year period. *See, e.g.,* Def.'s L.R. 56.1 Statements, Ex. 5. Moreover, Bennett admits that his company, Unlimited Wiring, was in a contractual relationship with DirectSAT for two one-year periods – 2006-2007 and 2009-2010. Pl.'s Resp. to Def.'s 56.1 Statements ¶ 130, ECF No. 130, Page ID # 1678. Between 2007 and 2009, Illinois Wiring remained in business. Upon its dissolution, Bennett formed Unlimited which remains in business today. *Id.* ¶ 70.

Garrison and Litt's circumstances are substantially similar. They first entered into an Agreement with DirectSAT in 2006 on behalf of Professional Services. They then entered into two separate Agreements (one on behalf of Professional Services and the other on behalf of Sat1Pro) in 2009. None of the parties

attempt to argue or explain why Plaintiffs and DirectSAT did not continue to do business in the 2008 year.

In addition to this, the Agreements between the parties permitted Plaintiffs to hire and utilize their own technicians and allowed Plaintiffs to engage in other independent contracting activities. *See,* Def.'s L.R. 56.1 Statements of Fact, Exs. 5 & 6 at Sec. II (L); Sec. XV, ECF No. 116-5, PageID# 1047; ECF No. 116-6, PageID# 1066; ECF No. 119-5; PageID# 1512; ECF No. 119-6, PageID# 1526. Indeed, Garrison and Litt admit that within one week Professional Services had approximately five employees and they continued to receive applications from individuals seeking to become technicians of Professional Services. *See,* Pls.' Resp. to Defs.' Statement of Material Fact ¶ 46, ECF No. 136, PageID# 1755. While Plaintiffs contend that the clause in the Agreements which permitted them to engage in other independent contracting activities was illusory because they were overwhelmed with work from DirectSAT, the fact remains that DirectSAT permitted other contracting activities. Taken together, these facts do not suggest economic dependence and therefore weigh in Defendants' favor. *See, generally, Lauritzen*, 835 F.2d at 1536-1538.

Despite these facts, Plaintiffs argue that DirectSAT had significant control over their companies and businesses because DirectSAT required Plaintiffs and their technicians to follow its procedures and meet installation requirements. However, courts

- 16 -

have held that requiring technicians to meet "installation specifications is entirely consistent with the standard role of a contractor who is hired to perform highly technical duties . . .[.]" *Herman v. Mid-Atlantic Installation Servs.*, 164 F.Supp.2d 667, 672 (D. Md. 2000).

Plaintiffs also point to the DirectSAT's ability to control their daily work schedule as evidence of control. Specifically, they complain that they could not reschedule jobs without penalty and were forced to attend quality control meetings at specific times. Be that as it may, the Seventh Circuit has stated that "[m]erely setting a work schedule is not sufficient to support a finding that a given person is an employee rather than an independent contractor." *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 566 (7th Cir. 2009) (citations omitted). Furthermore, it has held that "the fact that a person is required to be at a given place at a given time" is not sufficient to support an employer-employee relationship. *Id.* (citing *Alexander v. Rush North Shore Med. Ctr.,* 101 F.3d 487, 493 (7th Cir. 1996). Accordingly, the Court does not find Plaintiffs' arguments concerning work schedules and procedures convincing to establish the control required to transform a relationship into an employer-employee relationship.

On the other hand, the fact that the Agreements required Plaintiffs to maintain their own bank accounts, procure their own

- 17 -

insurance, and pay their own Federal and State taxes on behalf of their businesses is indicative of a lack of control.  Defendants also point to Plaintiffs' ability to pay their own technicians at a rate of their choosing.  *See,* Pls. Litt and Garrison's Resp. to Defs.' L.R. 56.1 Statement of Material Fact ¶¶ 74-75 (admitting that Garrison and Litt opted to pay their technicians $60.00 for an installation job as opposed to $70.00 because they wanted to "stay competitive" within the field of cable installers).  Thus, taking into account the totality of the circumstances, the Court does not find DirectSAT exercised a sufficient amount of control over Plaintiffs to establish "economic dependence."  *See, generally, Lauritzen*, 835 F.2d at 1536-1538.

b.  *Opportunity for Profit and Loss*

The next factor the Court considers when determining whether a worker is an employee or an independent contractor is the worker's opportunity for profit or loss.  While certainly not dispositive, the Court finds this factor particularly enlightening in assessing the relationship between the parties here.

First, DirectSAT concedes that their Agreements provided that Plaintiffs and their technicians were subjected to "chargebacks" if they failed to comply with certain specification guidelines or lost satellite equipment.  *See,* Def.'s L.R. 56.1 at ¶¶ 57-59.  Plaintiffs point to this as evidence to support their

inability to control their profits and losses. However, "chargebacks do not strongly indicate employee status." *Scantland v. Jeffry Knight, Inc.*, No. 12-12614, 2013 U.S. App. LEXIS 14393 at *20 (11th Cir. July 16, 2013).

Moreover, Plaintiffs overlook the fact that they were permitted to purchase their own vehicles, tools, insurance, and licensure fees. This allowed Plaintiffs to control the overhead costs of their business, which in turn affected their profits. Indeed, Garrison testified that Professional Services would search for "[w]hoever had the cheapest [insurance] rate at the time" while providing the "maximum coverage" when determining what insurance company to use. *See,* Pls. Litt and Garrison's Resp. to Defs.' L.R. 56.1 Statement of Material Fact ¶ 17, ECF No. 136, PageID# 1745. Obviously, this allowed Plaintiffs to control their profits and losses.

In addition to this, Garrison and Litt admitted that they chose the exact pay their technicians would receive based upon a pay range DirectSAT provided. *See,* Pls. Garrison and Litt's Resp. to Defs.' L.R. 56.1 Statement of Material Fact ¶ 74. They acknowledge that this allowed them to receive more money. They further admit that as co-owners of their own company, they were never required to pay themselves, and instead chose to do so. *See, id.* ¶¶ 76-77. All of these facts reflect Plaintiffs' ability to control their own profits and losses.

Finally, it is worth noting that Bennett's company, Unlimited, and Garrison's company, Sat1Pro, are still in business today. *See,* Pl. Bennett's Resp. to Defs.' L.R. 56.1 Statement of Fact ¶ 79, ECF No. 130, PageID # 1694. This fact does not suggest that Plaintiffs' companies were economically dependent upon DirectSAT.

### c. Investment and Equipment

The third factor the Court considers is the alleged "employee's investment in equipment or materials required for his task, or his employment of workers." *Jeffry Knight*, *Inc.*, 2013 U.S. App. LEXIS 14393 at *24. While courts have held that this factor should not "weigh heavily in the analysis" it is but one of the six factors set forth in *Lauritzen*. *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 567 (7th Cir. 2009).

In *Scantland v. Knight*, (a case Plaintiffs urge the Court to rely upon in their motion to submit supplemental authority), the Eleventh Circuit determined that because the cable installation technicians were required to have their "own vehicles, auto insurance, tools and safety equipment, and commercial general liability insurance," this tipped the scale in favor of independent contractor status. *Scantland v. Knight*, 2013 U.S. App. LEXIS 14393 at *24. Similar to the Seventh Circuit, the Eleventh Circuit reasoned that the factor only did so "weakly"

- 20 -

since many technicians probably had purchased their own vehicles before entering into the relationship with the alleged employer and probably purchased their specialty tools through payroll withholdings from the alleged employer. *Id.* at *25.

With respect to the investment of equipment *Scantland* is comparable to the case at bar. Here, Plaintiffs were required to procure their own insurance and have their own vehicles and ladders for the installation services. In addition, Plaintiffs were required to pay their own federal and state taxes on behalf of their respective companies. The Court finds these facts indicative of at least some "economic independence." *See, Jaworski v. Master Hand Contractors, Inc.*, No. 09 C 07255, 2013 WL 1283534 at *4 (N.D. Ill. Mar. 27, 2013) (stating that the "investment factor is related to the opportunity for profit or loss factor . . .").

### d. Special Skills

The fourth factor is whether the services the alleged employee renders require "special skills." *Lauritzen*, 835 F.2d at 1535. A finding of unique or distinctive skills weighs in favor of independent contractor status. *Id.* Defendants argue that Plaintiffs work as cable installation technicians qualifies as a special skill. They rely upon case law from other Circuits as support. *See, Chao v. Mid-Atlantic Installation Servs.*, 16

- 21 -

Fed.Appx. 104, 107 (4th Cir. 2001) (stating that "skills of cable installers are akin to those of carpenters, construction workers, and electricians"); *see also, Freund v. Hi-Tech Satellite, Inc.*, 185 Fed.Appx. 782, 784 (11th Cir. 2006).

Plaintiffs, on the other hand, contend that this case is distinguishable because DirectSAT had "inside tech employees." Pl.'s Mem. in Opp. Resp. to Def. Bennett's Mot. for Summ. J. at 14. However, Plaintiffs fail to articulate whether DirectSAT's alleged "inside tech employees" perform the same services and possess the same skills as Plaintiffs. Indeed, other than their bare assertion regarding inside tech employees, Plaintiffs fail to offer any support why this fact would cause Plaintiffs' skills as cable installation technicians to be any less "special." In fact, it is worth noting that the supplemental authority Plaintiffs request the Court to consider (*Scantland v. Jeffry Knight*, 2013 U.S. App. LEXIS 14393 at *26), also concluded that this factor weighed in favor of independent contractor status. *Id.* at *26. Accordingly, the Court finds this factor weighs in Defendants' favor.

e. *Degree of Permanency in the Working Relationship*

The final factor the Court considers is the degree of permanency in the working relationship. As the Court noted previously, it is undisputed that the Agreements the parties executed were one-year term contracts. *See,* Defs.' L.R. 56.1

- 22 -

Statement of Material Fact as to Garrison & Litt, Exs. 5-7, ECF
Nos. 119-5, 119-6, & 119-7; *see also,* Defs.' L.R. 56.1 Statement
of Material Fact as to Bennett, Exs. 5-6, ECF Nos. 116-5 & 116-6.
While the Agreements contained an automatic renewal clause unless
written notification was provided, Plaintiffs admit they worked
for DirectSAT only from 2006-2007 and then again in 2009.
Bennett worked from 2009-2010, but Garrison and Litt only worked
for a portion of 2009, as their final 2009 Agreement was
terminated.

This factor illustrates a significant difference between
this case and *Scantland*. *Id.* at *27-28. In *Scantland*, the
average length of service for the named plaintiffs was five
years. *Id.* at *28. Also, in that case, the plaintiffs could not
work for other companies. *Id.* The Agreements here provide
otherwise. Thus, the terms of Agreements and the lack of
permanency in the parties' business relationship weigh in favor
of independent contractor status. *See, Lamson v. EMS Energy
Mktg. Serv., Inc.*, 868 F.Supp.2d 804, 814 (E.D. Wis. 2012)
(finding a contract that was for a specific term but included an
automatic renewal provision did not weigh in favor of finding an
employer-employee relationship).

### f.  Integral Part of the Business

The final factor of the economic reality test is whether the
services the alleged employee rendered were an integral part of

the alleged employer's business.  *See, Harper v. Wilson*, 302 F.Supp.2d 873, 879 (N.D. Ill. 2004) (explaining that "workers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer.").

Defendants concede that the services Plaintiffs provided were a critical part of DirectSAT's business.  However, Defendants correctly point out that this factor is not dispositive, as the Seventh Circuit has held repeatedly that no single factor is controlling in determining an individual's employment status.  *See, Bulaj v. Wilmette Real Estate & Mgmt. Co., LLC*, No. 09 CV 6263, 2010 WL 4237851 at *5 (N.D. Ill. Oct. 21, 2010) (citing *Lauritzen,* 835 F.2d at 1534) (courts "do not look to a particular isolated factor but to all the circumstances of the work activity.").

After considering all of the above factors, the Court concludes that Plaintiffs are not employees under the FLSA.  In addition to that already mentioned, the Court also finds it worth mentioning that the Plaintiffs' subjective beliefs supports this finding.

For example, when Bennett filed for Chapter 13 Bankruptcy in 2009, he identified "Unlimited Wiring, Inc." as the business in which he "was an officer director, partner . . . sole proprietor or was self-employed in a trade, profession, or other activity" on his Bankruptcy Petition.  Defs.' L.R. 56.1 Statements of

Material Fact, Ex. 3 at 73-74, ECF No. 116-3.  Then later in 2012, Bennett filed for Chapter 7 Bankruptcy.  In this Petition he identified "Unlimited LLC" as his employer and stated that the length of his employment with Unlimited was "7 years."  Pl.'s Resp. to Def.'s L.R. 56.1 Statements ¶¶ 76-77.  The fact there was never any mention of DirectSAT on either Petition also weighs in favor of a finding of independent contractor status.

The record also contains evidence of Garrison's subjective intent regarding the parties' relationship.  During his deposition, Garrison testified that he and Litt sought to make Professional Services, Inc. "the biggest contracting company in Illinois." *See,* Defs.' L.R. 56.1 Statement of Material Fact; Ex. 3, ECF No. 119-3 at PageID #1341.  In his deposition he also explained why Professional Services, Inc. was one of the top subcontracting companies.  He stated, ". . . the difference between subcontracting and in-house technicians . . . [is that] that [i]n-house technicians get paid by the hour, so they don't care if a job goes in or not.  Subcontractor who has to spend his own money and buy his own tools and equipment, he is going to get that job in . . .[.]" *Id.* at PageID #1343-44.

In sum, when considering the language of the Agreements, the six factor economic reality test, and the parties' subjective beliefs, the Court finds Plaintiffs were independent contractors.  Because of this, Plaintiffs' claims under the FLSA fail.

Accordingly, the Court grants Defendants' summary judgment with respect to Counts I and II.

### C.  Supplemental Jurisdiction Declined Over Pendent State Law Claims

Plaintiffs' only remaining claims are their state law claims under the IMWL and the IWCPA (Counts III & IV).  The Court, in its discretion, declines to exercise supplemental jurisdiction over these claims.  *See,* 28 U.S.C. § 1367(c)(3); *see also*, *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("[s]upplemental jurisdiction is a doctrine of discretion . . .").  Thus, the Court dismisses Plaintiffs' IMWL and IWCPA claims without prejudice to allow Plaintiffs' to re-file these claims in state court if they so choose.  The Court notes that its decision not to exercise supplemental jurisdiction does not reflect any views regarding the merits of Plaintiffs' state law claims.

### IV.  <u>CONCLUSION</u>

For the reasons stated herein the Court rules as follows:

1.  Defendants' Motion to Strike [ECF No. 142] is granted in part and denied in part;

2.   Defendants' Motion for Summary Judgment as to Plaintiff James Bennett [ECF No. 115] is granted in part;

3.    Defendants' Motion for Summary Judgment as to Plaintiffs Jermaine Litt and Jerome Garrison [ECF No. 118] is granted in part; and

4. Counts III & IV of the Complaint are dismissed without prejudice to allow Plaintiffs to re-file these claims in state court.

**IT IS SO ORDERED.**


_____
        Harry D. Leinenweber, Judge
        United States District Court

Date: September 9, 2013

- 27 -