**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **JAMES BENNETT, *et al.*,** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITEK GLOBAL SERVICES, LLC, *et al.*,** <br><br> Defendants. | Case No. 10 C 4968 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court awards Defendants the sum of $6,045.75 pursuant to their Bill of Costs. The Court grants Plaintiffs' Motion for Instructions pursuant to Local Rule 54.3(g) and rules that Defendants are not entitled to collect attorneys' fees from Plaintiffs.

### I. BACKGROUND

Plaintiffs James Bennett, Jerome Garrison, and Jermaine Litt brought this action against Defendants DirectSAT USA, LLC and Unitek Global Services, LLC for alleged violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. In September 2013, the Court granted summary judgment in favor of Defendants on the FLSA claim, finding that Plaintiffs were independent contractors and not employees of Defendant DirectSAT. The Court declined to

exercise jurisdiction over Plaintiffs' remaining state law claims and dismissed those claims without prejudice. ECF No. 158 at 26.

Defendants filed this Bill of Costs and ask for $6,562.60. Defendants claim that they are entitled to attorneys' fees as well, and sent Plaintiffs a letter seeking to confer on fees pursuant to Local Rule 54.3. Plaintiffs filed a Motion for Instructions pursuant to Local Rule 54.3(g) asking for a ruling that Defendants are not entitled to attorneys' fees.

## II. BILL OF COSTS

The Federal Rules provide that a prevailing party should be able to recover its costs, other than attorneys' fees, from the other party. FED. R. CIV. P. 54(d)(1). The Court "must determine that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation." *Weihaupt v. Am. Med. Ass'n,* 874 F.2d 419, 430 (7th Cir. 1989). This rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago,* 469 F.3d 631, 634 (7th Cir. 2006).

In addition to contesting specific cost items, Plaintiffs raise three other objections. They argue: (1) that Defendants are not prevailing parties, (2) that Plaintiff Bennett's obligation to pay costs was discharged in bankruptcy, and (3) that Plaintiffs Litt and Garrison should not be responsible for costs that were incurred before they joined the case as co-

plaintiffs in January 2012. Because all three Plaintiffs have argued that they are not responsible for various portions of the costs, the Court must determine how it will apportion responsibility for any costs taxed. Each issue is addressed in turn, before the Court discusses specific costs.

### A. Prevailing Party

Plaintiffs argue that Defendants are not entitled to costs because Defendants did not prevail in the case. "A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. Of Elec. Workers,* 573 F.3d 523, 525 (7th Cir. 2009). To prevail, a party need not win on every claim. *Slane v. Mariah Boats, Inc.,* 164 F.3d 1065, 1068 (7th Cir. 1999). Under Rule 54(d), "where there is a dismissal of an action, even where such dismissal is voluntary and without prejudice, the defendant is the prevailing party." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1015 (7th Cir. 1985).

Here, the Court granted summary judgment in favor of Defendants on the FLSA claim and dismissed without prejudice Plaintiffs' remaining claims, all of which were brought under state law. Thus, the Defendants prevailed on every claim within the meaning of Rule 54(d) and are prevailing parties for purposes of taxing costs.

## B. Bankruptcy

Plaintiffs argue that Bennett is not liable for any of the costs DirectSAT incurred in defending this action because such costs were discharged during Bennett's 2012 Chapter 7 bankruptcy proceedings. In May 2012, DirectSAT sued Bennett in Pennsylvania state court for breach of contract and sought $165,754.63 in costs and attorneys' fees that it claimed to incur defending this case. The next month, Bennett filed for bankruptcy and, because of the pending litigation over fees and costs, listed DirectSAT as a creditor. In October 2012, the bankruptcy court issued an order that "granted a discharge under section 727 of title 11, United States Code." ECF No. 169, Ex. 4. DirectSAT filed an objection to the discharge of Bennett's debt and an adversary complaint. The bankruptcy court dismissed DirectSAT's adversary complaint, but the record before this Court does not explain why it did so. Bennett argues that the bankruptcy court proceedings absolved him of any responsibility for the costs of this case.

Bennett's Chapter 7 bankruptcy proceeding discharged "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). The filing of a petition under Chapter 7 constitutes an "order for relief." 11 U.S.C. § 301. Thus, Bennett's Chapter 7 bankruptcy discharged only those debts that arose before June 26, 2012, the day he filed for bankruptcy. Bennett commenced this suit in August 2010, but pursued his

claims in this Court for over a year after he filed the bankruptcy petition. Because this case spans both sides of that June 26, 2012 divide, the issue before this Court is whether Bennett is responsible for the costs of this case that arose before June 26, 2012, after that date, or both.

The Court could not locate any authority for the idea that Defendant can recover costs incurred before the bankruptcy discharge by virtue of the continuation of the litigation after the discharge. In addition, Defendant does not argue that it can recover those pre-petition costs from Bennett. Thus, the Court declines to tax Bennett any costs that arose as part of this litigation before June 26, 2012.

Costs that arose after that date are a different story, and present a somewhat thorny issue, because the litigation commenced before the bankruptcy discharge in which Bennett listed DirectSAT as a creditor for the costs of this case. While caselaw on this issue is scarce, courts appear to focus on "why and how the debtor incurred the post-petition debt." *Bell v. Ruben,* No. 12 C 8311, 2013 WL 6211743, at *10 (N.D. Ill. Nov 26, 2013). The Ninth Circuit has explained that

> [w]hether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a pre-petition claim and has

> thereby risked the liability of these litigation expenses.

*In re Ybarra,* 424 F.3d 1018, 1026 (9th Cir. 2005). The *Ybarra* court held that a post-petition fee award was not discharged where the plaintiff-debtor, after filing the bankruptcy petition, revived voluntarily a separate lawsuit that had been dismissed. *Id.* at 1027.

Similarly here, after the bankruptcy discharge, Bennett sought leave to file a third amended complaint, thereby evidencing his desire to continue this litigation anew even after the bankruptcy. In an oral ruling, this Court denied leave to amend, noting among other things that Bennett and his co-plaintiffs were responsible for delaying this case needlessly. Indeed, throughout this litigation, Plaintiffs have requested at least eight extensions of various deadlines set by the Court. Such was their right, but Bennett cannot be excused from the costs of dragging out this case, one of which is that Defendants incurred costs defending this action after the date of the bankruptcy discharge.

The Court sees no reason why Bennett should be allowed to hide behind these delays to avoid costs that were only "post-petition" because he insisted on numerous extensions. *Ybarra,* 424 F.3d at 1026 ("Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a

> thereby risked the liability of these litigation expenses.

*In re Ybarra,* 424 F.3d 1018, 1026 (9th Cir. 2005). The *Ybarra* court held that a post-petition fee award was not discharged where the plaintiff-debtor, after filing the bankruptcy petition, revived voluntarily a separate lawsuit that had been dismissed. *Id.* at 1027.

Similarly here, after the bankruptcy discharge, Bennett sought leave to file a third amended complaint, thereby evidencing his desire to continue this litigation anew even after the bankruptcy. In an oral ruling, this Court denied leave to amend, noting among other things that Bennett and his co-plaintiffs were responsible for delaying this case needlessly. Indeed, throughout this litigation, Plaintiffs have requested at least eight extensions of various deadlines set by the Court. Such was their right, but Bennett cannot be excused from the costs of dragging out this case, one of which is that Defendants incurred costs defending this action after the date of the bankruptcy discharge.

The Court sees no reason why Bennett should be allowed to hide behind these delays to avoid costs that were only "post-petition" because he insisted on numerous extensions. *Ybarra,* 424 F.3d at 1026 ("Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a

debtor to undertake risk-free litigation at others' expense."). Bennett's bankruptcy petition did not discharge his obligation to pay the costs of this case that were incurred after June 26, 2012.

### C. Plaintiffs Litt and Garrison

Plaintiffs Litt and Garrison argue that they are not responsible for costs incurred before they joined as Plaintiffs in January 2012. The costs that were incurred before Litt and Garrison joined the case include the service of subpoena charges and the fees to obtain transcripts of several status hearings. The Court sees no reason to distinguish between these expenses and those expenses incurred after Litt and Garrison joined the case. Once they were in the case, Litt and Garrison participated in both discovery and summary judgment briefing with the benefit of work already completed by Bennett and Defendants. To the extent that these expenses were necessary to the litigation (but as discussed below, some of them were not), it seems unusual to allow the latecomer Plaintiffs to benefit from discovery obtained before they joined yet absolve them of responsibility for those costs now that they have lost their case. Plaintiffs' argument does not overcome the presumption that the prevailing party will recover allowable costs from the losing party. *Rivera v. City of Chicago,* 469 F.3d 631, 634 (7th Cir. 2006).

**D. Apportioning Responsibility for Costs**

When costs are awarded against a losing party, "the presumptive rule is joint and several liability unless it is clear that one or more of the parties is responsible for a disproportionate share of the costs." *Anderson v. Griffin,* 397 F.3d 515, 522–23 (7th Cir. 2005). The non-prevailing party bears the burden to show that joint and several liability should not apply. *Petit v. City of Chicago,* 90 C 4984, 2003 WL 22339277, at *3 (N.D. Ill. Oct. 10, 2003).

Plaintiffs have offered no reason why liability should not be joint and several, and thus the Court applies that presumption. However, the unusual twist in this case is that Bennett's bankruptcy action absolved him of responsibility for costs incurred before he filed his petition. Therefore, Plaintiffs Litt and Garrison shall be liable jointly and severally for costs incurred before June 26, 2012. For costs incurred after that date, the Court orders that Plaintiffs Bennett, Litt, and Garrison shall be liable jointly and severally.

**E. Costs**

*1. Deposition Expenses*

First, Defendants request $5,980.65 for the costs associated with seven depositions. That amount breaks down into the three

categories: transcript and copy fees, exhibit fees, and court reporter attendance fees.

Defendants request $5,237.10 for deposition transcripts. "Deposition and transcript costs are recoverable where the deposition was reasonably necessary at the time the deposition was taken in light of the facts known at the time." *Kaplan v. City of Chicago,* No. 05 C 2001, 2009 WL 1940789, at *4 (N.D. Ill. July 6, 2009). Plaintiffs do not object to these costs, and the rate charged per page does not exceed the $3.65 rate establishing by the Judicial Conference. *See,* Local Rule 54.1. Therefore, the Court awards $5,237.10 for deposition transcripts.

Next, Defendants seek $93.55 for copies of deposition exhibits. Courts should not award "costs associated with deposition exhibit copies unless the costs are essential to understanding an issue in the case." *Fait v. Hummel,* No. 01 C 2771, 2002 WL 31433424, at *2 (N.D. Ill. Oct. 30, 2002). Defendants do not identify those exhibits or even assert that the exhibit copies are essential to understanding any issues in the case. The Court has no way to know what the exhibits were, and thus cannot conclude that the exhibits were necessary, regardless of whether the costs sought are reasonable. The Court declines to tax these costs.

Finally, Defendants ask for $650.00 in court reporter attendance fees. Even though court reporter fees are not

specifically mentioned in the statute that allows for taxing costs, court reporter fees fall into the category of fees for obtaining transcripts. *Held v. Held,* 137 F.3d 998, 1002 (7th Cir. 1998). Local Rule 54.1 allows the Court to tax court reporter attendance fees up to $220 for a full day, in addition to the per page limit for transcripts. Defendants request $220 each for two days and $210 for a third day, which is within the amount allowed by the rule. Plaintiffs do not object to these costs. The Court grants Defendants' request for reporter attendance fees in the amount of $650.00.

All of these costs were incurred after June 26, 2012. Therefore, Plaintiffs Bennett, Litt, and Garrison shall be liable jointly and severally for $5,887.10 for the costs associated with the depositions.

### *2. Subpoena Expenses*

Defendants seek to recover $328.00 in process service fees for subpoenas served on Unlimited, LLC, JP Morgan Chase, and Bank of America. The prevailing party may recover subpoena service fees under 28 U.S.C. § 1920(1). *See, Collins v. Gorman,* 96 F.3d 1057, 1060 (7th Cir. 1996). Unlimited, LLC was Plaintiff Bennett's company, and the other two subpoenas were served upon banking institutions that held accounts for Unlimited. However, Defendants have not provided an accounting of the hourly rate charged, which prevents the Court from determining whether the

rate charged conformed to the maximum rate of $55 per hour plus travel costs and out-of-pocket expenses. *See, Huerta v. Vill. of Carol Stream,* No. 09 C 1492, 2013 WL 427140, at *3 (N.D. Ill. Feb. 4, 2013). Therefore, the Court reduces the amount requested to one hour per subpoena, or $115 total. Because these expenses were incurred before Bennett's bankruptcy, liability for this cost shall be joint and several between Litt and Garrison.

### 3. *Court Hearing Transcripts*

Lastly, Defendants request $253.95 for transcripts of eight court hearings held between November 2010 and November 2012. Plaintiffs object to these expenses on the ground that those transcripts were not reasonable and necessary to the present litigation. "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009).

Defendants claim that the requested hearing transcripts "were necessarily obtained to have record of Court orders and other statements made in open court for use in defending this action." ECF No. 161 at 5. On October 18, 2012, the Court issued an oral ruling that denied Plaintiffs' request for leave to file an amended complaint. It is reasonable for Defendants to

request a transcript of that ruling, and the $43.65 expense is reasonable as well.

The remaining hearings, however, involved only routine matters, such as setting briefing schedules and updating the Court on the status of the case. Defendants have given the Court no reason to think that those hearings were overly complicated such that note-taking during the proceedings would have been inadequate, or that counsel could not have obtained all the necessary information (such as precise due dates for briefs) from the Court's minute orders. Therefore, Defendants have not met their burden of establishing that those transcripts were necessary to the litigation.

The Court taxes $43.65 against all three Plaintiffs, jointly and severally, for the cost of the hearing transcript.

### III. MOTION FOR INSTRUCTIONS

This Court's Local Rules provide that a party may file a "motion for instructions" when it appears that the parties cannot resolve disputes related to whether a party is entitled to attorneys' fees or the proper procedure by which to obtain those fees. L.R. 53.3(g). Defendants began pursuing attorneys' fees for their successful defense of this case, and Plaintiffs filed a Motion for Instructions that asks the Court for a ruling that Defendants are not entitled to attorneys' fees.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). The fee-shifting provision in the Fair Labor Standards Act – the statute at issue in this case – is available only to prevailing plaintiffs, not to prevailing defendants. 29 U.S.C. § 216(b). However, Courts have several mechanisms by which they can award fees to a prevailing party when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline,* 421 U.S. at 258-59.

Plaintiffs in this case pursued a claim to summary judgment and lost. The Court's summary judgment ruling analyzed the six factors from *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen,* 835 F.2d 1529 (7th Cir. 1987), to determine whether Plaintiffs and Defendants had a valid employer-employee relationship for FLSA purposes. Plaintiffs presented evidence, arguments, and citations to pertinent authority in their attempt to show that the *Lauritzen* factors weighed in favor of a determination that Plaintiffs were employees, not independent contracts. Those arguments were unsuccessful, but the Court did not then and does not now view them as frivolous. The Court reached its holding only after it had undertaken a detailed analysis of all of the evidence and precedent supporting either side. No single case controlled the outcome, and no single factor was dispositive. It

is true enough that Plaintiffs pursued discovery on their class action claims before dropping the class claims, and also that Plaintiffs requested extensions of various deadlines set by the Court. But it does not appear that Plaintiffs pursued their claims in bad faith or acted vexatiously, wantonly, or for oppressive reasons. *See, Mach v. Will County Sheriff,* 580 F.3d 495, 502 (7th Cir. 2009) (explaining that "pursuing [claims] to summary judgment—even facing great odds against their success—[does] not warrant sanctions").

The Court declines to impose sanctions. Plaintiffs' Motion for Instructions is granted, and the Court rules that Defendants are not entitled to any attorneys' fees for their defense of this case.

### IV. CONCLUSION

For the reasons stated herein, the Court as follows:

1. The Court taxes $6,045.75 against Plaintiffs and in favor of Defendants pursuant to the Bill of Costs [ECF No. 160]. Of that amount, Plaintiffs Bennett, Litt, and Garrison shall be liable jointly and severally for $5,930.75, while Plaintiffs Litt and Garrison shall be liable jointly and severally for $115.00;

2. The Court grants Plaintiff's Motion for Instructions [ECF No. 169], and rules that Defendants are not entitled to fees in this case;

3. Defendants' Motion to Seal [ECF No. 175] is granted to protect the confidential settlement materials included in Defendants' filing;

4. Defendants' Motion for Sanctions [ECF No. 179] is denied; and

5. Defendants' Motion to Submit Supplemental Authority [ECF No. 186] is denied as moot.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

Date:4/2/2014